**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
MIDLAND/ODESSA DIVISION**

| COMMWORKS SOLUTIONS, LLC, | |
|---|---|
| Plaintiff, | Civil Action No. 7:25-cv-00305 |
| v. | **JURY TRIAL DEMANDED** |
| RINGCENTRAL, INC., | |
| Defendant. | |

**COMPLAINT FOR PATENT INFRINGEMENT**

Plaintiff CommWorks Solutions, LLC ("CommWorks" or "Plaintiff") files this complaint against Defendant RingCentral, Inc. ("Defendant" or "RingCentral") alleging, based on its own knowledge as to itself and its own actions, and based on information and belief as to all other matters, as follows:

**NATURE OF THE ACTION**

1. This is a patent infringement action for Defendant's infringement of the following United States Patents (collectively, the "Asserted Patents"), issued by the United States Patent and Trademark Office ("USPTO"):

|    | Patent No. | Title | Reference |
|----|-----------|-------|-----------|
| 1. | 6,857,007 | Personal Digital Assistant Facilitated Communication System | https://ppubs.uspto.gov/pubwebapp/authorize.html?redirect=print/pdfRedirectDownload/6857007 |
| 2. | 8,224,909 | Mobile Computing Device Facilitated Communication System | https://ppubs.uspto.gov/pubwebapp/authorize.html?redirect=print/pdfRedirectDownload/8224909 |
| 3. | 8,533,278 | Mobile Computing Device Based Communication Systems and Methods | https://ppubs.uspto.gov/pubwebapp/authorize.html?redirect=print/pdfRedirectDownload/8533278 |

2. Plaintiff seeks monetary damages.

## PARTIES

3. CommWorks is a limited liability company formed under the laws of the State of Georgia with its registered office address located in Alpharetta, Georgia (Fulton County).

4. Defendant RingCentral, Inc. is a corporation organized under the laws of the state of Delaware with a principal place of business at 20 Davis Drive, Belmont, California 94002. Upon public information and belief, Defendant RingCentral, Inc. has maintained a registration to do business in Texas since at least January 6, 2020.

5. Defendant has a business location in this Judicial District in Austin, Texas. *See Marble VOIP Partners LLC v. RingCentral, Inc.*, 6:22-cv-00259-ADA, Dkt. No. 111, at pp. 2, 9-12 (W.D. Tex. June 9, 2023).

6. On information and belief, Defendant has directly and/or indirectly developed, designed, manufactured, distributed, marketed, offered to sell and/or sold infringing products and services in the United States, including in the Western District of Texas, and otherwise directs infringing activities to this District in connection with its products and services as set forth in this Complaint.

## JURISDICTION AND VENUE

7. CommWorks repeats and re-alleges the allegations in the paragraphs above as though fully set forth in their entirety.

8. This is an action for infringement of a United States patent arising under 35 U.S.C. §§ 271, 281, and 284–85, among others. This Court has subject matter jurisdiction of the action under 28 U.S.C. § 1331 and § 1338(a).

9. Defendant is subject to this Court's specific and general personal jurisdiction under due process due at least to Defendant's substantial business in this judicial district, including: (i)

at least a portion of the infringements alleged herein; (ii) regularly transacting, doing, and/or soliciting business, engaging in other persistent courses of conduct, or deriving substantial revenue from goods and services provided to individuals in Texas and in this District; and (iii) having an interest in, using or possessing real property in Texas.

10. Specifically, Defendant has done business in and has committed acts of infringement in this District directly, through intermediaries, by contributing to and through their inducement of third parties, and offers its products or services, including those accused of infringement here, to customers and potential customers located in this District.

11. Defendant has purposefully directed infringing activities at residents of the State of Texas, and this litigation results from those infringing activities. Defendant regularly sells (either directly or indirectly), its products within this District. For example, upon information and belief, Defendant has placed its products into the stream of commerce *via* an established distribution channel with the knowledge or understanding that such products are being sold in this District and the State of Texas. Defendant is subject to this Court's specific and/or general personal jurisdiction pursuant to due process and/or the Texas Long Arm Statute, due to its substantial and pervasive business in this State and District, including its infringing activities alleged herein, from which Defendant derives substantial revenue from goods sold to residents and consumers.

12. Defendant sells, offers for sale, uses, makes and/or imports products that are and have been used, offered for sale, sold, and purchased in the Western District of Texas, and Defendant has committed acts of infringement in the Western District of Texas, has conducted business in the Western District of Texas, and/or has engaged in continuous and systematic activities in the Western District of Texas.

13. Under 28 U.S.C. §§ 1391(b)-(d) and 1400(b), venue is proper in this judicial district

as to Defendant at least because Defendant has transacted business in this District and committed acts of infringement from this District, including, but not limited to, the sale and use of the products identified below.

14. On information and belief, as identified above in paragraph 5, Defendant has a business location in this Judicial District in Austin, Texas and has numerous employees in Texas. *See Marble VOIP Partners LLC v. RingCentral, Inc.*, 6:22-cv-00259-ADA, Dkt. No. 111, at pp. 2, 9-12, 16 (W.D. Tex. June 9, 2023).

15. On information and belief, Defendant has authorized sellers and sales representatives that offer and sell products identified in this Complaint throughout the State of Texas, including in this Judicial District, and to consumers throughout this Judicial District.

## THE ACCUSED PRODUCTS

16. CommWorks repeats and re-alleges the allegations in the paragraphs above as though fully set forth in their entirety.

17. Defendant uses, causes to be used, manufactures, provides, supplies, or distributes the RingCentral RingEX Fax Solution and the RingCentral Online Fax Services (collectively, the "Accused Products").

18. On information and belief, Defendant provides information and assistance to its customers to enable them to use the Accused Products in an infringing manner as described below.

19. For these reasons and the additional reasons detailed below, the Accused Products practice at least one claim of each of the Asserted Patents.

20. By letter dated March 20, 2020, addressed to John Marlow at RingCentral, Inc. (the "Notice Letter"), Defendant received notice of its infringement of CommWorks' patents, including the Asserted Patents.

**COUNT I:   INFRINGEMENT OF U.S. PATENT NO. 6,857,007**

21. CommWorks repeats and re-alleges the allegations in the paragraphs above as though fully set forth in their entirety.

22. The USPTO duly issued U.S. Patent No. 6,857,007 (the "'007 patent") on February 15, 2005, after full and fair examination of Application No. 09/723,349 which was filed November 27, 2000.  The '007 patent is entitled "Personal Digital Assistant Facilitated Communication System."

23. CommWorks owns all substantial rights, interest, and title in and to the '007 patent, including the sole and exclusive right to prosecute this action and enforce the '007 patent against infringers and to collect damages for all relevant times.

24. CommWorks or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of the '007 patent.

25. The claims of the '007 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity. Rather, the claimed inventions include inventive components that improved upon the conventional methods of sending and receiving facsimile transmissions via electronic mail through a fax-to-email communication system, thereby providing facsimile recipients with more flexibility and convenience sending and receiving facsimiles. '007 patent at 1:18-24, 2:64-3:10.  The written description of the '007 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

26. Defendant has directly infringed the '007 patent by making, using, offering to sell, selling, and/or importing the Accused Products identified above.

27. Defendant has directly infringed, either literally or under the doctrine of equivalents, at least claim 1 of the '007 patent, as detailed in **Exhibit A** to this Complaint (Evidence of Use Regarding U.S. Patent No. 6,857,007).

28. On information and belief, Defendant has infringed the '007 Patent pursuant to 35 U.S.C. § 271(a), literally or under the doctrine of equivalents, by making, using, offering for sale, selling, and/or importing into the United States the Accused Products.

29. For example, as detailed in **Exhibit A**, Defendant has infringed at least claim 1 of the '007 Patent by making, using, offering to sell, selling, and/or importing the Accused Products, which perform a facsimile communication method. *See* **Exhibit A**. The process for performing the facsimile communication method includes receiving at a personal data assistant a destination address; conveying via a first data exchange the received address from the personal data assistant to a host interface portion together with commands instructing the host interface portion to initiate a facsimile delivery; establishing, through the dialing of a destination address different from the destination address received during the receiving step, a communication session between the host interface portion and a forwarding facility; conveying the received address from the host interface portion to the forwarding facility, during the first communication session via a second data exchange independent of the first data exchange; conveying an image from a fax function associated with the host interface portion to the forwarding facility, during the first communication session via a third data exchange independent of the first and the second data exchanges; and delivering the image as an electronic file from the forwarding facility to the destination address received at the personal data assistant; and wherein the first data exchange involves at least a first

protocol, and the second data exchange involves at least a second protocol different from the first protocol, and the third data exchange involves at least a third protocol different from each of the first and second protocols. *Id*.

30. From March of 2020 to the expiry of the '007 Patent, Defendant had also indirectly infringed the '007 patent by inducing others to directly infringe the '007 patent. Defendant had induced distributors and end-users, including, but not limited to, Defendant's employees, partners, contractors, or customers, to directly infringe, either literally or under the doctrine of equivalents, the '007 patent by providing or requiring use of the Accused Products. Defendant had taken active steps, directly or through contractual relationships with others, with the specific intent to cause them to use the Accused Products in a manner that infringed one or more claims of the '007 patent, including, for example, claim 1 of the '007 patent. Such steps by Defendant included, among other things, advising or directing personnel, contractors, or end-users to use the Accused Products in an infringing manner; advertising and promoting the use of the Accused Products in an infringing manner; or distributing instructions that guide users to use the Accused Products in an infringing manner. Defendant had performed these steps, which constitute induced infringement with the knowledge of the '007 patent and with the knowledge that the induced acts constitute infringement. Defendant had been aware that the normal and customary use of the Accused Products by others would infringe the '007 patent.

31. From March of 2020 to the expiry of the '007 patent, Defendant had also indirectly infringed by contributing to the infringement of the '007 patent. Defendant had contributed to the direct infringement of the '007 patent by its personnel, contractors, distributors, and customers. The Accused Products have special features that were specially designed to be used in an infringing way and that have no substantial uses other than ones that infringed one or more claims of the '007

patent, including, for example, claim 1 of the '007 patent.  The special features constituted a material part of the invention of one or more of the claims of the '007 patent and were not staple articles of commerce suitable for substantial non-infringing use.

32.  Defendant had knowledge of the '007 patent when it received the Notice Letter in March of 2020.

33.  Furthermore, on information and belief, Defendant has a policy or practice of not reviewing the patents of others, including instructing its employees to not review the patents of others, and thus has been willfully blind of CommWorks' patent rights.

34.  Defendant's actions are at least objectively reckless as to the risk of infringing a valid patent and this objective risk was either known or should have been known by Defendant.

35.  Defendant's direct infringement of one or more claims of the '007 patent is, has been, and continues to be willful, intentional, deliberate, or in conscious disregard of CommWorks' rights under the patent.

36.  CommWorks has been damaged as a result of the infringing conduct by Defendant alleged above.  Thus, Defendant is liable to CommWorks in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

### COUNT II:  INFRINGEMENT OF U.S. PATENT NO. 8,224,909

37.  CommWorks repeats and re-alleges the allegations in the paragraphs above as though fully set forth in their entirety.

38.  The USPTO duly issued U.S. Patent No. 8,224,909 (the "'909 patent") on July 17, 2012, after full and fair examination of Application No. 12/369,785, which was filed on February

12, 2009. The '909 patent is entitled "Mobile Computing Device Facilitated Communication System." A Certificate of Correction was issued on January 8, 2013.

39. CommWorks owns all substantial rights, interest, and title in and to the '909 patent, including the sole and exclusive right to prosecute this action and enforce the '909 patent against infringers and to collect damages for all relevant times.

40. CommWorks or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of the '909 patent.

41. The claims of the '909 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity. Rather, the claimed inventions include inventive components that improve upon the function and operation of preexisting communication systems by using a bifurcated interface to enhance the convenience, flexibility, and functionality of faxing-related tasks. '909 Patent at 4:1-39. The bifurcated interface of the '909 Patent accomplishes enhanced functionality by transmitting documents via a facsimile protocol and seamlessly delivering the document as an electronic file or an attachment to an email address. *Id.* at 4:20-35. The bifurcated interface of the '909 Patent further accomplishes convenient and enhanced entry of data associated with fax-to-email tasks, such as entry of an email address and custom text at a portable device unconstrained by location or time. *Id.* at 4:5-9, 4:36-39. The bifurcated interface of the '909 Patent further accomplishes the flexibility of communicating fax-to-email tasks and/or fax-to-fax tasks from multiple, separate interfaces and multiple users to a single interface host or one of multiple interfaces hosts. *Id.* at 4:10-19.

42. The written description of the '909 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-

conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

43. Defendant has directly infringed the '909 patent by making, using, offering to sell, selling, and/or importing the Accused Products identified above.

44. Defendant has directly infringed, either literally or under the doctrine of equivalents, at least claim 1 of the '909 patent, as detailed in **Exhibit B** to this Complaint (Evidence of Use Regarding U.S. Patent No. 8,224,909).

45. On information and belief, Defendant has infringed the '909 Patent pursuant to 35 U.S.C. § 271(a), literally or under the doctrine of equivalents, by making, using, offering for sale, selling, and/or importing into the United States the Accused Products.

46. For example, as detailed in **Exhibit B**, Defendant, using the Accused Products, has infringed at least claim 1 of the '909 Patent by making, using, offering to sell, selling, and/or importing the Accused Products, which comprise a facsimile-to-email system. *See* **Exhibit B**. The facsimile-to-email system comprises a facsimile-to-email (FEM) server in communication with at least one communications network, a first mobile computing device, and a plurality of second mobile computing devices, wherein the FEM server is configured to: receive first facsimile information from a first facsimile device and receive second facsimile information from a second facsimile device, wherein the first facsimile information is different than the second facsimile information; receive a first destination address for the first facsimile information from the first mobile computing device, wherein the destination address comprises at least one of an e-mail address or a telephone number; receive a second destination address from one of the plurality of second mobile computing devices; and transmit the first facsimile information to the first

destination address via the communications network and transmit the second facsimile information to the second destination address via the communications network. *Id.*

47.     From March of 2020 to the expiry of the '909 patent, Defendant had also indirectly infringed the '909 patent by inducing others to directly infringe the '909 patent. Defendant had induced distributors and end-users, including, but not limited to, Defendant's employees, partners, contractors, or customers, to directly infringe, either literally or under the doctrine of equivalents, the '909 patent by providing or requiring use of the Accused Products. Defendant had taken active steps, directly or through contractual relationships with others, with the specific intent to cause them to use the Accused Products in a manner that infringed one or more claims of the '909 patent, including, for example, claim 1 of the '909 patent. Such steps by Defendant included, among other things, advising or directing personnel, contractors, or end-users to use the Accused Products in an infringing manner; advertising and promoting the use of the Accused Products in an infringing manner; or distributing instructions that guide users to use the Accused Products in an infringing manner. Defendant had performed these steps, which constitutes induced infringement with the knowledge of the '909 patent and with the knowledge that the induced acts constitute infringement. Defendant had been aware that the normal and customary use of the Accused Products by others would infringe the '909 patent.

48.     From March of 2020 to the expiry of the '909 patent, Defendant had also indirectly infringed by contributing to the infringement of the '909 patent. Defendant had contributed to the direct infringement of the '909 patent by its personnel, contractors, distributors, and customers. The Accused Products have special features that were specially designed to be used in an infringing way and that have no substantial uses other than ones that infringed one or more claims of the '909 patent, including, for example, claim 1 of the '909 patent. The special features constituted a

material part of the invention of one or more of the claims of the '909 patent and were not staple articles of commerce suitable for substantial non-infringing use.

49. Defendant had knowledge of the '909 patent when it received the Notice Letter in March of 2020.

50. Furthermore, on information and belief, Defendant has a policy or practice of not reviewing the patents of others, including instructing its employees to not review the patents of others, and thus has been willfully blind of CommWorks' patent rights.

51. Defendant's actions are at least objectively reckless as to the risk of infringing a valid patent and this objective risk was either known or should have been known by Defendant.

52. Defendant's direct infringement of one or more claims of the '909 patent is, has been, and continues to be willful, intentional, deliberate, or in conscious disregard of CommWorks' rights under the patent.

53. CommWorks has been damaged as a result of the infringing conduct by Defendant alleged above. Thus, Defendant is liable to CommWorks in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

### COUNT III: **INFRINGEMENT OF U.S. PATENT NO. 8,533,278**

54. CommWorks repeats and re-alleges the allegations in the paragraphs above as though fully set forth in their entirety.

55. The USPTO duly issued U.S. Patent No. 8,533,278 (the "'278 patent") on September 10, 2013, after full and fair examination of Application No. 13/490,403, which was filed on June 6, 2012. The '278 patent is entitled "Mobile Computing Device Based Communication Systems and Methods." A Certificate of Correction was issued on April 29, 2014.

56. CommWorks owns all substantial rights, interest, and title in and to the '278 patent, including the sole and exclusive right to prosecute this action and enforce the '278 patent against infringers and to collect damages for all relevant times.

57. CommWorks or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of the '278 patent.

58. The claims of the '278 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity. Rather, the claimed inventions include inventive components that improve upon the function and operation of preexisting communication systems by using a bifurcated interface to enhance the convenience, flexibility, and functionality of faxing-related tasks. '278 Patent, at 4:4-42. The bifurcated interface of the '278 Patent accomplishes enhanced functionality by transmitting documents via a facsimile protocol and seamlessly delivering the document as an electronic file or an attachment to an email address. *Id.* at 4:23-38. The bifurcated interface of the '278 Patent further accomplishes convenient and enhanced entry of data associated with fax-to-email tasks, such as entry of an email address and custom text at a portable device unconstrained by location or time. *Id.* at 4:8-12, 4:39-42. The bifurcated interface of the '278 Patent further accomplishes the flexibility of communicating fax-to-email tasks and/or fax-to-fax tasks from multiple, separate interfaces and multiple users to a single interface host or one of multiple interfaces hosts. *Id.* at 4:13-22.

59. Defendant has directly infringed the '278 patent by importing, selling, manufacturing, offering to sell, using, providing, supplying, or distributing the Accused Products identified above.

60. Defendant has directly infringed either literally or under the doctrine of equivalents, at least claim 1 of the '278 patent, as detailed in **Exhibit C** to this Complaint (Evidence of Use Regarding U.S. Patent No. 8,533,278).

61. On information and belief, Defendant has infringed the '278 Patent pursuant to 35 U.S.C. § 271(a), literally or under the doctrine of equivalents, by making, using, offering for sale, selling, and/or importing into the United States the Accused Products.

62. For example, as detailed in **Exhibit C**, Defendant, using the Accused Products, has infringed at least claim 1 of the '278 patent by making, using, offering to sell, selling, and/or importing the Accused Products, which is a system. *See* **Exhibit C**. The system comprises a facsimile-to-email (FEM) server for communicating with at least one communications network and a mobile computing device, wherein the FEM server is configured to: receive information from a facsimile component with a first identifier; receive a destination address with a second identifier, wherein the destination address is associated with the information, and is from the mobile computing device, and wherein the destination address comprises at least one of an e-mail address or a telephone number; determine that the destination address is an intended destination for the information based on at least one of the first and second identifiers; and transmit the information to the destination address by the FEM server via the at least one communications network. *Id.*

63. From March of 2020 to the expiry of the '278 patent, Defendant had also indirectly infringed the '278 patent by inducing others to directly infringe the '278 patent. Defendant had induced distributors and end-users, including, but not limited to, Defendant's employees, partners, contractors, or customers, to directly infringe, either literally or under the doctrine of equivalents, the '278 patent by providing or requiring use of the Accused Products. Defendant had taken active

steps, directly or through contractual relationships with others, with the specific intent to cause them to use the Accused Products in a manner that infringed one or more claims of the '278 patent, including, for example, claim 1 of the '278 patent.  Such steps by Defendant included, among other things, advising or directing personnel, contractors, or end-users to use the Accused Products in an infringing manner; advertising and promoting the use of the Accused Products in an infringing manner; or distributing instructions that guide users to use the Accused Products in an infringing manner.  Defendant had performed these steps, which constitutes induced infringement with the knowledge of the '278 patent and with the knowledge that the induced acts constitute infringement.  Defendant had been aware that the normal and customary use of the Accused Products by others would infringe the '278 patent.

64. From March of 2020 to the expiry of the '278 patent, Defendant had also indirectly infringed by contributing to the infringement of the '278 patent.  Defendant had contributed to the direct infringement of the '278 patent by its personnel, contractors, distributors, and customers.  The Accused Products have special features that were specially designed to be used in an infringing way and that have no substantial uses other than ones that infringed one or more claims of the '278 patent, including, for example, claim 1 of the '278 patent.  The special features constituted a material part of the invention of one or more of the claims of the '278 patent and were not staple articles of commerce suitable for substantial non-infringing use.

65. Defendant had knowledge of the '278 patent when it received the Notice Letter in March of 2020.

66. Furthermore, on information and belief, Defendant has a policy or practice of not reviewing the patents of others, including instructing its employees to not review the patents of others, and thus has been willfully blind of CommWorks' patent rights.

67. Defendant's actions are at least objectively reckless as to the risk of infringing a valid patent and this objective risk was either known or should have been known by Defendant.

68. Defendant's direct infringement of one or more claims of the '278 patent is, has been, and continues to be willful, intentional, deliberate, or in conscious disregard of CommWorks' rights under the patent.

69. CommWorks has been damaged as a result of the infringing conduct by Defendant alleged above. Thus, Defendant is liable to CommWorks in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

## JURY DEMAND

70. CommWorks hereby requests a trial by jury on all issues so triable by right.

## PRAYER FOR RELIEF

71. CommWorks requests that the Court find in its favor and against Defendant, and that the Court grant CommWorks the following relief:

    a. Judgment that one or more claims of each of the Asserted Patents has been infringed, either literally or under the doctrine of equivalents, by the Defendant or others acting in concert therewith;

    b. Judgment that Defendant accounts for and pays to CommWorks all damages to and costs incurred by CommWorks because of Defendant's infringing activities and other conduct complained of herein;

    c. Judgment that Defendant's infringements of the '007, '909, and '278 patents during their life be found willful, and that the Court award treble damages for the period of such willful infringement pursuant to 35 U.S.C. § 284;

d. Pre-judgment interest on the damages caused by Defendant's infringing activities and other conduct complained of herein;

e. That this Court declare this an exceptional case and award CommWorks its reasonable attorneys' fees and costs in accordance with 35 U.S.C. § 285; and

f. All other and further relief as the Court may deem just and proper under the circumstances.

Dated: July 9, 2025                               Respectfully submitted,

By: /s/ James F. McDonough, III

James F. McDonough, III (GA 117088)*
**ROZIER HARDT MCDONOUGH PLLC**
659 Auburn Avenue NE, Unit 254
Atlanta, Georgia 30312
Telephone: (404) 564-1866, -1863, -1862
Email: jim@rhmtrial.com

Jonathan L. Hardt (TX 24039906)*
**ROZIER HARDT MCDONOUGH PLLC**
712 W. 14th Street, Suite A
Austin, Texas 78701
Telephone: (210) 289-7541; (737) 304-8481
Email: hardt@rhmtrial.com

*Attorneys for Plaintiff COMMWORKS SOLUTIONS, LLC*

\* Admitted to the Western District of Texas

**List of Exhibits**
A. Evidence of Use Regarding U.S. Patent No. 6,857,007
B. Evidence of Use Regarding U.S. Patent No. 8,224,909
C. Evidence of Use Regarding U.S. Patent No. 8,533,278

**List of Attachments**
- Civil Cover Sheet